IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:20-CV-00275-M

NATIONAL COATINGS & SUPPLY, INC.,  )
and SINGLE SOURCE, INC.,            )
                                    )
    Plaintiffs,                     )
                                    )           ORDER
v.                                  )
                                    )
VALLEY FORGE INSURANCE CO.,         )
                                    )
    Defendant.                      )
                                    )

Before the court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint [DE 22]. Defendant seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for the Plaintiff's purported failure to state plausible claims for relief. Following briefing on the motion, Plaintiffs filed notices of supplemental authority to which Defendant objected. For the reasons that follow, the motion is granted and the Plaintiffs' claims are dismissed.

I.   **Statement of Facts**

The following are factual allegations (as opposed to statements of bare legal conclusions, unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiffs in the operative Amended Complaint (DE 16), which the court accepts as true pursuant to *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Plaintiff Single Source, Inc. is a wholly owned subsidiary of Plaintiff National Coatings & Supplies, Inc. (collectively, "Plaintiffs"). Plaintiffs service over 15,000 collision centers and other customers across the United States through approximately 200 business locations and more than

1,000 employees. Plaintiffs provide to their customers automotive paint and other coatings for industrial, marine, aircraft, and heavy-duty transportation/vehicles. Plaintiffs also provide the equipment, goods, and tools needed to apply coatings and any goods necessary to repair personal and commercial vehicles.

On or about December 31, 2019, Plaintiffs entered into a contract of insurance with Defendant Valley Forge Insurance Company ("Defendant"), numbered 6079579447 and labeled and marketed under "CNA" (the "Policy"), whereby Plaintiffs agreed to make premium payments to Defendant in exchange for Defendant's promise to indemnify Plaintiffs for losses including, but not limited to, business income losses at Plaintiffs' thirteen business locations in North Carolina, for the period December 31, 2019 to December 31, 2020.[1] The Policy was in full effect at all relevant times and provides for property damage and business interruption coverages.

The Policy is an "all-risks" policy, insofar as it provides that "covered peril" under the Policy means "a fortuitous cause or event, not otherwise excluded." "Covered property" is defined by the Policy as "the property that is insured for loss or damage under the Business Property Coverage Part or endorsements." The Coverage Parts at issue here are defined in the Policy as follows:

1. Denial of Access Coverage–Ingress/Egress, which covers the actual loss of business income Plaintiffs sustain due to the necessary suspension or delay of its operations

---

[1] Valley Forge attached copy of the Policy to the Motion at DE 13-2. The court may consider the document for a Rule 12(b)(6) analysis "where the document 'was integral to and explicitly relied on in the complaint' and where 'the plaintiffs do not challenge [the document's] authenticity.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, there is no challenge to the authenticity of the Policy, and the Plaintiffs repeatedly cite to and explicitly rely on the Policy for their claims in this case. *See McElveen v. Cincinnati Ins. Co.*, 422 F. Supp. 3d 1068, 1071, 1073 (D.S.C. 2019) (summarily denying Rule 12(b)(1) request for lack of argument and considering a copy of an insurance policy for a Rule 12(b)(6) analysis).

when ingress or egress by Plaintiffs' suppliers, customers, or employees is physically obstructed to or from Plaintiffs' business locations due to direct physical loss of or damage to property not owned or occupied by Plaintiffs.

2. Denial of Access Coverage–Civil Authority, which covers the actual loss of business income Plaintiffs sustain during the period of restoration due to a necessary suspension or delay of its operations caused by an action of civil authority that prevents access to Plaintiffs' business locations.

3. Contaminants or Pollutants Clean Up and Removal Coverage–Property and Time Element Combined, which covers the actual loss of business income Plaintiffs sustain due to the necessary suspension or delay of its operations as a result of compliance with an ordinance or law that requires clean up or removal of contaminants from land or water at Plaintiffs' business locations.

4. Fungi, Wet Rot, Dry Rot and Microbe Coverage–Property Damage and Time Element Combined part, which states that Defendant "will also pay" for the actual loss of business income Plaintiffs sustain due to physical loss of or damage to Plaintiffs' property caused by microbes, including viruses, which are the direct result of a covered peril.

5. Time Element Coverage—Business Income and Extra Expense Coverage, which covers the actual loss of business income Plaintiffs sustain during the period of restoration due to the necessary suspension or delay of its operations, and extra expense, caused by direct physical loss of or damage—as a result of a covered peril—to property at Plaintiffs' locations.

6. Dependent Property Time Element Coverage, which covers the actual loss of business

income Plaintiffs sustain due to the necessary suspension or delay of its operations caused by direct physical loss of or damage—as a result of a covered peril—to property operated by others upon whom Plaintiffs depend "located anywhere in the world." According to the Policy, the "period of restoration" means the period of time beginning with "the time and date that the physical loss or damage that causes suspension of operations occurs." In addition, as pertinent here, the Policy contains an exclusion for "loss or damage caused directly or indirectly by or resulting from the presence, growth, proliferation, spread or any activity of fungi, wet or dry rot, or microbes." Under the Policy, "microbes means any . . . virus."

The first case of the virus COVID-19 was reported in the United States in January 2020; since then, outbreak of the virus has reached the level of a global pandemic. Reported studies by the Centers for Disease Control and Prevention ("CDC") and others have concluded that COVID-19 survives and remains infectious on surfaces and objects for days. COVID-19 has spread around the country, including areas located within five miles of Plaintiffs' business locations. Civil authorities have recognized the presence of COVID-19 and its threat to health and, in some circumstances, to life, and have issued "stay at home" orders for the public. In North Carolina, Governor Cooper has issued civil authority orders due to "an immediate threat of serious physical injury" from COVID-19. N.C. Exec. Order No. 118 (Mar. 17, 2020). In addition, on March 27, 2020, Governor Cooper issued Executive Order No. 121 requiring individuals to stay at home and prohibiting non-essential travel. Specifically, the order states that, in response to the "documented 763 cases of COVID-19 across 60 counties," it was issued "to assure adequate protection of lives and property of North Carolinians." Furthermore, Mecklenburg County, North Carolina issued a "Joint Order and Declaration," effective on March 26, 2020, that "restricted access and travel upon public streets, alley, roadway or upon any other public property" in order to "protect" "property."

4

Case 5:20-cv-00275-M   Document 38   Filed 03/16/21   Page 4 of 16

At certain of Plaintiffs' locations, employees contracted COVID-19, resulting in suspension and delay of operations, as well as extra clean-up and sanitation expenses at NCS properties. The CDC has issued guidance for the closing, cleaning, and disinfection of businesses where persons suspected to have COVID-19 have visited. Various collision centers and properties that attract customers to the Plaintiffs, upon which Plaintiffs depend for business, have also been forced to suspend operations. As a result, Plaintiffs have experienced, and continue to experience, substantial losses to their business income. Plaintiffs also have substantially reduced their operations and temporarily laid off numerous employees. In accordance with the Policy, Plaintiffs timely submitted notice of their business interruption and insurance claims and have complied with the conditions precedent as set forth in the Policy.

On or about July 2, 2020, Defendant formally denied coverage for all of Plaintiffs' claims in their entirety (the "Denial Letter"). The Denial Letter is on CNA letterhead and is signed by Defendant's "National General Adjuster."' The letter implies incorrectly that the Policy is a "named-peril" policy rather than an "all-risks" policy. In addition, the letter repeatedly states that coverage is provided only for losses "caused by a 'covered peril'" and that NCS had not submitted "any evidence" in support of such "covered peril." For example, the letter states, "The virus that causes COVID-19 is not a covered peril under the Policy," but does not define "covered peril" nor explains how COVID-19 is excluded. Furthermore, although the Denial Letter acknowledges that instances of COVID-19 existed at Plaintiffs' business locations that triggered, at a minimum, sanitation and clean-up expenses, the letter concludes that there was not "any evidence that any physical loss or damage to property at [Plaintiffs' locations] has occurred."

**II. Procedural History**

Based on these allegations, Plaintiffs seek a "declaration that the Policy provides coverage

5

for Plaintiffs' [insurance] claims" and assert claims for breach of contract and breach of the covenant of good faith and fair dealing. Am. Compl., ECF 16. Defendant argues that the operative Amended Complaint should be dismissed for Plaintiffs' failure to state plausible claims for relief; specifically, Defendant contends that Plaintiffs do not allege "physical loss of or damage to property" as required for coverage under the Business Property Coverage Parts of the Policy listed in the pleading. In addition, Defendant asserts that the Policy contains an unambiguous exclusion for the presence, growth, spread, or other activity of microbes, including viruses, which demonstrates that coverage is not available for Plaintiffs' insurance claims.

Plaintiffs counter that (1) the Policy's language may be interpreted to require either "direct physical loss" or "damage to property" based on the conjunction, "or"; (2) case law demonstrates that "damage to property" includes "intangible damages such as the diminution in value of tangible property"; (3) case law demonstrates that "direct physical loss . . . of property" includes property that has been rendered unusable for its intended purpose; (4) a North Carolina superior court has determined that "various restaurants suffered 'physical loss' when they were forced to close due to COVID-19"; (5) the "covered peril" alleged here is the "global-wide spread of COVID-19"; (6) the "microbes" exclusion is ambiguous and, thus, must be construed against Defendant; and (7) Plaintiffs have plausibly pled all claims for relief and courts have determined that "bad faith" claims are typically to be decided by juries.

Defendant replies that the Policy requires any loss or damage must be "physical"; Plaintiffs have not alleged that any of their locations were rendered "unusable for their intended purposes"; the Policy requires that, to be covered, an action by a civil authority must have "prohibited" access to Plaintiffs' locations; the Policy clearly provides that coverage for microbes, including viruses, exists only if the microbes result from a covered peril, which is not alleged here; and because

6

Plaintiffs have failed to allege coverage for their insurance claims, the legal claims should be dismissed.

### III. Legal Standards

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A defendant against whom a claim has been brought can challenge a pleading's sufficiency under Rule 8 by moving the court pursuant to Rule 12(b)(6) to dismiss the pleading for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal

[conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

## IV. Analysis

In a diversity case such as this, the court applies and interprets the substantive law of the state in which the action arose. *See Adams v. Am. Optical Corp.*, 979 F.3d 248, 255 (4th Cir. 2020) (citing *Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 646 (4th Cir. 2004)). Here, no party disputes the application of North Carolina law to the issues raised in this case.

The North Carolina Supreme Court instructs that determining the meaning of language in an insurance policy presents a question of law for the court. *Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295, 838 S.E.2d 454, 456 (2020) (citing *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970)). When interpreting an insurance policy in North Carolina, courts should apply general contract interpretation rules. *Id.* Thus, "[a]s in other contracts, the objective of construction of terms in an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Id.* (quoting *Wachovia Bank*, 276 N.C. at 352, 172 S.E.2d at 522).

As demonstrated by case law reviewed by the court and cited by the parties, the court acknowledges the possibility that parties may enter into an insurance contract in which the insurer

8

agrees to provide payment for losses and/or damage caused by infectious diseases. The question then is whether, through the Policy's language and/or the parties' course of dealing, the parties agreed that the risk contemplated by the Policy includes direct physical loss of or damage to property due to an infectious disease. More specifically, this court must determine whether the Policy's terms provide coverage for Plaintiffs' claims of business interruption losses and/or damage caused by the COVID-19 pandemic.

A. Applicability of the Microbes Exclusion Provision

As set forth above, Defendant seeks dismissal arguing coverage under the Policy is unambiguously excluded for loss or damage caused by the presence or spread of microbes, including "any virus." Plaintiffs counter that dismissal is improper because the Policy's microbe exclusion provision is ambiguous and must be construed against Defendant. "[E]xclusions from, conditions upon[,] and limitations of undertakings by the company, otherwise contained in the policy, are to be construed strictly so as to provide the coverage, which would otherwise be afforded by the policy." *Wachovia Bank*, 276 N.C. at 355, 172 S.E.2d at 522–23. The insurer has the burden to show that an exclusion applies. *Kruger v. State Farm Mut. Auto. Ins.*, 102 N.C. App. 788, 790, 403 S.E.2d 571, 572 (1991).

When a party challenges a relevant provision of the insurance policy as ambiguous, North Carolina law requires that courts construe any ambiguity or uncertainty as to the words used in the policy against the insurance company and in favor of the policyholder or beneficiary. *Accardi*, 373 N.C. at 295, 838 S.E.2d at 456. "Ambiguity is not established by the mere fact that the insured asserts an understanding of the policy that differs from that of the insurance company . . . [r]ather, ambiguity exists if, in the opinion of the court, the language is 'fairly and reasonably susceptible to either of the constructions for which the parties contend.'" *Id.* at 295, 838 S.E.2d at 457 (quoting

9

*Wachovia Bank*, 276 N.C. at 352, 172 S.E.2d at 522).

On the other hand, if a court finds that no ambiguity exists, the court must construe the document according to its terms. *Id.* at 295, 838 S.E.2d at 456-57. "If the policy contains a definition of a term, the court applies that meaning unless the context requires otherwise[;] . . . [h]owever, if the policy fails to define a term, the court must define the term in a manner that is consistent with the context in which the term is used, and the meaning accorded to it in ordinary speech." *Id.* at 295, 838 S.E.2d at 457 (quoting *Wachovia Bank*, 276 N.C. at 352, 172 S.E.2d at 522). In construing the language, the court may not remake the policy or "impose liability upon the company which it did not assume and for which the policyholder did not pay." *Id.*

In this case, the relevant exclusion provision provides, in pertinent part:

V. Exclusions
 . . .

   A. Excluded Perils Subject to Concurrent Provisions

>With respect to the excluded perils below, the Insurer will not pay for loss of or damage to property directly or indirectly caused by or resulting from the following causes of loss or events: . . . Fungi, Wet Rot, Dry Rot and Microbes . . . regardless of: the causes of such excluded causes or events; other causes of such loss; any other cause or event, whether or not insured under the coverage part, which may have contributed concurrently, or in any sequence to produce such loss even if such other cause or event would otherwise be covered; and whether the event occurred suddenly or gradually, involved isolated or widespread damage, arose from natural or external sources or acts or omissions, or occurred as a result of any combination of any such causes or events.
>. . .

   5. Fungi, Wet Rot, Dry Rot and Microbes

>The Insurer will not pay for loss or damage caused directly or indirectly by or resulting from the presence, growth, proliferation, spread or any activity of fungi, wet or dry rot, or microbes. However, this exclusion does not apply when fungi, wet or dry rot, or microbes results [sic] from fire or lightning.

Policy, DE 13-2 at 192. As set forth above, the Policy also provides limited coverage for business income loss, under which the Plaintiffs seek payment, as follows:

10

K.  Fungi, Wet Rot, Dry Rot and Microbes Coverage – Property Damage and Time Element Combined

. . .

2. To the extent time element coverage is applicable . . ., the Insurer will also pay, as provided, for:

   a. the actual loss of business income the Named Insured sustains during a period of restoration due to the necessary suspension or delay in operations;

. . .

due to the:

   i. direct physical loss of or damage to covered property caused by fungi, wet rot, dry rot or microbes that are the result of a covered peril, other than fire or lightning; or

   ii. prolonged period of restoration due to the remediation of fungi, wet rot, dry rot or microbes from a covered loss.

. . .

4. The Fungi, Wet Rot, Dry Rot and Microbes Excluded Peril under the EXCLUSIONS section does not apply, but only to the extent of the coverage provided under this ADDITIONAL COVERAGE.

*Id.* at 181-182. The term "microbes" is defined as "any non-fungal microorganism; non-fungal colony-form organism; virus; or bacteria." *Id.* at 48.

At the outset, the court notes that the Plaintiffs identify COVID-19 as the "peril" (or, "fortuitous cause or event") causing their losses and do not refute that COVID-19 is a "virus." *See* Resp. at 17. Therefore, Defendant has demonstrated that the Policy, on its face, excludes coverage for loss or damage caused directly or indirectly by or resulting from the presence, growth, proliferation, spread or any activity of COVID-19.

Plaintiffs disagree and argue that the Policy incorrectly includes "virus" in its definition of "microbes," since a microbe is a "minute life form" and a virus is not a living organism. Plaintiffs contend that, to avoid confusion, Defendant simply could have added, or incorporated the language

11

of, the standard virus exclusion issued by the Insurance Services Office, which produces standardized forms for insurance companies. While that may have been possible, the court finds no ambiguity in the mutually agreed-upon Policy's terms. At the Policy's issuance, its "First Party Glossary of Defined Terms" explicitly included "any virus" in the definition of "microbes." Whether the term "virus" appears in the microbes definition or were included in a specific standardized provision is of no consequence; its existence in the Policy clearly alerts the parties that both the exclusion and limited coverage provisions of the Business Property Coverage part include as a "microbe" "any virus." *Accardi*, 373 N.C. at 295, 838 S.E.2d at 457 ("If the policy contains a definition of a term, the court applies that meaning unless the context requires otherwise"). In fact, Plaintiffs specifically seek coverage under the Fungi, Wet Rot, Dry Rot and Microbe provision, asserting that "'microbes' . . . is defined by the Policy to include any 'virus.'"[2] Am. Compl. at ¶ 23.

Plaintiffs also point to the General Liability Coverage Part of the Policy saying the definition of "microbes" in that part does not include viruses and, therefore, causes confusion. The court is not convinced; the "First Party Glossary of Defined Terms," in which the definition for "microbes" appears, states plainly in the first sentence that it "applies to the Business Property Coverage Part and the Business Crime Coverage Part, as applicable, and their associated forms and endorsements." DE 13-2 at 40. Plaintiffs seek coverage for their insurance claims solely under the Business Property Coverage Part. The General Liability Coverage Part has its own "glossary" contained within the part titled, Section V – Definitions, and the endorsement to which Plaintiffs refer contains its own definition of "microbes." *Id.* at 321-326. Where sections or parts

---

[2] Plaintiffs argue that "the same term can have one meaning in a coverage grant, and a different meaning in an exclusion to obtain coverage" and that the coverage provision and exclusion "can apply to different sets of facts." Resp. at 22. However, they do not identify different meanings for the term "virus" nor explain how it applies to different sets of facts here.

of a policy appear "separate and apart" from each other, the definitions contained in each are "exclusive of each other" and are not comparable for purposes of determining whether an ambiguity exists between them. *Fieldcrest Cannon, Inc. v. Fireman's Fund Ins. Co.*, 124 N.C. App. 232, 243-44, 477 S.E.2d 59, 67 (1996), *on reh'g in part on other grounds*, 127 N.C. App. 729, 493 S.E.2d 658 (1997).

Further, Plaintiffs contend that the terms of the exclusion provision—"presence, growth, proliferation, spread, or any activity of . . . microbes"—are vague. The court disagrees. A reasonable reading of the provision, particularly in tandem with the part providing limited coverage for viruses, reveals that the Policy excludes direct or indirect loss or damage caused by a virus unless the virus is the result of a covered peril other than fire or lightning. *See Digital Age Mktg. Grp., Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-61566-CIV, -- F. Supp. 3d --, 2021 WL 80535, at *3 (S.D. Fla. Jan. 8, 2021) (finding similar language to be unambiguous); *see also Franklin EWC, Inc. v. Hartford Fin. Services Group, Inc.*, No. 20-CV-04434 JSC, -- F. Supp. 3d --, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) (finding the same language excludes claims for damage due to COVID-19).[3] Here, in identifying the "covered peril," the Plaintiffs assert their "alleged damages were caused by the global-wide spread of COVID-19." Resp. at 17. To be entitled to coverage under the limited Microbes provision, Plaintiffs must allege their losses and/or

---

[3] For their arguments, Plaintiffs rely heavily on the opinion in *Urogynecology Specialist of Fla. LLC v. Sentinel Ins. Co., Ltd.*, No. 6:20-CV-1174-ORL-22EJK, -- F. Supp. 3d --, 2020 WL 5939172 (M.D. Fla. Sept. 24, 2020) but, as noted by another Florida federal court, the *Urogynecology* court "refused to 'make a decision on the merits of the plain language of the Policy to determine whether Plaintiff's losses were covered' because, in part, the parties failed to provide the court with relevant coverage forms that corresponded to the exclusions." *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No. 1:20-CV-22833, 2020 WL 6392841, at *9 n.4 (S.D. Fla. Nov. 2, 2020); *see also N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, No. CV2005289RBKKMW, -- F. Supp. 3d --, 2020 WL 6501722, at *5 (D.N.J. Nov. 5, 2020) (with respect to "ambiguous aspects of the Policy," the *Urogynecology* court found "that policy and its exclusions referenced several other documents that were unattached to the insurance policy and were unavailable to the court.").

damages were caused by a virus *resulting* from a covered peril, but the purported peril in this instance is the very occurrence excluded by the plain language of the Policy: the growth, proliferation, and spread of a virus. Because Plaintiffs concede that they "have alleged [their] damages were caused by the global-wide spread of COVID-19," the court concludes Defendant has demonstrated that Plaintiffs' insurance claims are barred by the Policy's Fungi, Wet Rot, Dry Rot and Microbes exclusion.

B. Failure to State Claims for Relief

In finding that insurance coverage is barred by the Policy's exclusion provision, the court need not address Defendant's other arguments concerning whether Plaintiffs state plausible legal claims that their business interruption losses are covered under the six provisions identified in the Amended Complaint.[4] As set forth below, without the possibility of coverage, Plaintiffs' claims seeking declaratory relief and damages for breach of contract and breach of the duty of good faith and fair dealing must fail. *See Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am.*, -- F. Supp. 3d --, 2020 WL 7024882, at *4 n.4 (M.D.N.C. Nov. 30, 2020) (dismissed claims for damages due to COVID-19 noting "[t]he Court need not resolve questions about coverage provisions since the virus exclusion applies regardless."); *see also N&S Rest.*, 2020 WL 6501722

---

[4] Notably, however, Plaintiffs' concession that COVID-19 is a "virus," and their assertion that the global spread of COVID-19 is the "peril" that caused their losses and/or damages, establish not only that the exclusion applies, but also that they cannot demonstrate coverage under the six identified provisions, since each provision *requires* the occurrence of loss or damage directly caused by or resulting from a "covered peril." *See* Policy, DE 13-2 at 171 (Time Element Coverage—Business Income and Extra Expense Coverage); 174 (Dependent Property Time Element Coverage); 177-178 (Contaminants or Pollutants Clean Up and Removal Coverage—Property Damage and Time Element Combined); 178-179 (Denial of Access Coverage—Civil Authority); 179 (Denial of Access Coverage—Ingress/Egress); 181-182 (Fungi, Wet Rot, Dry Rot and Microbe Coverage—Property Damage and Time Element Combined). As the Plaintiffs acknowledge, the Policy defines a "covered peril" as a "fortuitous cause or event, not otherwise excluded." Resp. at 17 (emphasis added). The court has found COVID-19 is a virus, the spread of which is *excluded* by the Policy; accordingly, Plaintiffs fail to allege a "covered peril."

at *5 (finding the application of the exclusion provision precluded coverage and rendered implausible the plaintiff's claims for declaratory relief and breach of contract).

For their first claim for relief, Plaintiffs "contend, *inter alia*, that the Policy provides insurance coverage for Plaintiffs' insurance claims and that Valley Forge is required to cover the claims" pursuant to the six identified coverage provisions, and they seek "a declaration that the Policy provides coverage for Plaintiffs' claims." Am Compl. at ¶¶ 54-65. For their second claim for breach of contract, Plaintiffs allege, "Defendant denies that it has an obligation to cover Plaintiffs' Claims [pursuant to the six identified coverage provisions], thereby breaching its obligations under the Policy and under North Carolina law." *Id.* at ¶¶ 68-75. For their third claim for breach of the duty of good faith and fair dealing, Plaintiffs allege "Defendant is obligated to provide coverage for Plaintiffs' Claims under the terms of the Policy" and "Defendant's actions [set forth in the letter denying coverage] are designed to avoid coverage that is provided under the Policy for Plaintiffs' Claims." *Id.* at ¶¶ 78, 89. As each claim relies on coverage under the Policy, which is precluded by this court's finding on the exclusion provision, the claims as pled must be dismissed. *See Affinity Living Grp., LLC v. StarStone Specialty Ins. Co.*, 959 F.3d 634, 638 (4th Cir. 2020) (citing *Tillis v. Calvine Cotton Mills, Inc.*, 251 N.C. 359, 111 S.E.2d 606, 610 (1959)) ("Without a contractual duty to provide coverage, [an insurer] cannot breach the covenant of good faith and fair dealing.").

Plaintiffs do not seek leave to amend the operative complaint, *see Zachair, Ltd. v. Driggs*, 141 F.3d 1162, 1998 WL 211943, at *3 (4th Cir. April 30, 1998) (citing *Sachs v. Snider*, 631 F.2d 350, 351 (4th Cir. 1980)) ("... amendment following a Rule 12(b)(6) dismissal is not permitted as a matter of right under Rule 15(a)."), and the court finds on this record no basis on which to grant such leave *sua sponte*. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 293

(4th Cir. 2018) ("Plaintiffs whose actions are dismissed are free to subsequently move for leave to amend pursuant to Federal Rule of Civil Procedure 15(b) even if the dismissal is with prejudice."). Therefore, Plaintiffs' claims will be dismissed with prejudice.

## V. Conclusion

As have other courts, this court recognizes the significant impact the COVID-19 pandemic has had, not only on the health and lives of millions of people, but also on the ability of businesses, whether large or small, to succeed, thrive, and in some circumstances, survive. However, the Policy unambiguously excludes coverage for "loss or damage caused directly or indirectly by or resulting from the presence, growth, proliferation, [or] spread" of "any virus." Where, as here, "the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted." *Natty Greene's Brewing Co.*, 2020 WL 7024882, at *4 (quoting *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962)).

Defendant's Motion to Dismiss Plaintiff's Amended Complaint [DE 22] is GRANTED. Plaintiff's claims are dismissed with prejudice. The Clerk of the Court is directed to close this case.

SO ORDERED this 15th day of March, 2021.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE